Robert W. Cacace, J.
The defendant herein is charged with operating a motor vehicle while in an intoxicated condition in violation of subdivision 3 of section 1192 of the Vehicle and Traffic Law.
Trial was had in this court before a jury on December 11, 1973. At the close of the People’s case the defendant moved to dismiss the complaint on the ground that the information charging the offense was defective in that the subdivision and the title of the law alleged to have been violated were not set forth in the information, and that the information was jurisdictionally defective in that it was not properly verified by the complainant. For purposes of clarity, a copy of the information is set forth herein.
In regard to the ¡first prong of defendant’s motion, it is the opinion of the court that the defects in the information are not substantial and the lack of nomenclature can be cured by amendment (People v. Dioquardo, 303 N. Y. 514; People v. Easton, 307 N. Y. 336, 339; People v. Thomson, 62 Misc 2d 838, 839). The defendant is adequately apprised of the charge against her and is sufficiently protected from the hazard of double jeopardy by the specifics set forth in the information (People v. Zambounis, 251 N. Y. 94; People v. Schultz, 301 N. Y. 495).
In regard to the second prong of defendant’s motion, however, the court feels the defendant is on firmer ground.
The statute setting forth the necessary prerequisites for the proper verification of accusatory instruments is CPL 100.30, which reads as follows:
“ 1. An information, a misdemeanor complaint, a felony complaint and a supporting deposition may be verified in any <of the following manners:
<< * # #
*104 u (b) * * *
“ (e) * * *
“ (d) Such instrument may bear a form notice that false statements made therein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law, and such form notice together with the subscription of the deponent constitute a verification of the instrument.”
The information charging the crime herein contains the statement required by section 210.45 of the Penal Law which statement, under CPL 100.30 (subd. 1, par. [d]), is an authorized form of verification. The statement, however, is not followed by the signature of the complainant.
The question which must be decided is whether or not the insertion of the proper words on the face of an accusatory instrument, even though the sigriature of the complainant does not follow the words and, in fact, precedes them, is a sufficient compliance with CPL 100.30.
It is the contention of the People that the information herein is in compliance in that the complainant signed the information at the bottom, and that the placement of the required notice is irrelevant as long as it appears some place on the accusatory instrument. The court is unable to agree.
The necessity for a sworn complaint as a prerequisite to the commencement of a criminal prosecution has long been established in this State (People ex rel. Siegal v. Dros, 11 N Y 2d 167; People v. Polle, 9 N Y 2d 349). It is irrelevant whether the information be used as a basis for an arrest or merely as a pleading document (People v. James, 4 N Y 2d 482).
The requirement that an information be sworn to is jurisdictional in nature and, as such, cannot be waived by a defendant, even by a guilty plea (Albrecht v. United States, 273 U. S. 18: Weeks v. United States, 216 F. 292; People ex rel. Battista v. Christian, 249 N. Y. 314).
It is readily ¡apparent that if the form used in the present case was insufficient to comply with the statute, the charge must be dismissed. In essence, what must be done is to. interpret the statute, i.e., CPL 100.80 and the intent of the Legislature in its enactment.
The statute says, in part, “ such form notice together with the subscription of the deponent constitute a verification of the instrument.” The intent to have the notice affirmed by a signature placed underneath the words is mandated by the statutory language itself. If there had been commas after the words “ notice ” and “ deponent ” so that the phrase “ together with *105 the subscription of the deponent ” would not be tied directly into and become a further explanation of the subject, that is “ such form notice,” it might be argued that the phrase is only a further description of the subject. However, given the lack of punctuation in the paragraph, the phrasing “ together with the subscription of the deponent ” can only refer to the form notice.
In addition to the grammatical mandate, there is the persuasive argument of legal precedent. While - the court has found no case similar to the instant matter, there have been numerous determinations in the civil law, primarily in cases dealing with wills and the Statute of Frauds, which indicate that the word “ subscription ” means a signature placed at the bottom or end of the contents of the document (Matter of Marques, 123 N. Y. S. 2d 877; Matter of Winters, 277 App. Div. 24, affd. 302 N. Y. 666; Steinberg v. Universal Machinenfabrik GMBH, 24 A D 2d 886, affd. 18 N Y 2d 943).
In the case of James v. Patten (6 N. Y. 9 ) the Court of Appeals in interpreting the then “ -Statute of Frauds ” held that a signature placed elsewhere on the instrument, but not at the bottom thereof, would not be binding. At page 13 of that decision, the word “ subscribe ” was defined as follows: “ the word * subscribed ’, in its habitual use, and according to both its popular and literary signification, is limited to a signature at the end of a printed or written instrument.”
In ascribing a motive to the legislative terminology, one text has set forth their opinion that “ subscribed ” means signing at the end of a document in the following language: “ Presumably the underlying purpose of the legislature in requiring that a memorandum be ‘ subscribed ’ is the same as that in the case of wills, which must be subscribed by a signature at the end of the document, namely, to prevent fraud through insertion or additions to a writing subsequent to its execution ” (56 N. Y. Jur., Statute of Frauds, § 220).
In the interpretation of CPLB 2106, a similar liberalization of the form of verification enabling an attorney at law to affirm, rather than take a formal oath, the courts have taken a firm position that the formal requirements be complied with by disallowing the use of a rubber stamp for a signature (Sandymark Realty Corp. v. Creswell, 67 Misc 2d 630); and in not allowing “ the mere typing ” of the attorney’s name to suffice the dictates of the statute (Macri v. St. Agnes Cemetery, 44 Misc 2d 702).
In at least one textbook designed to aid and guide lawyers and others in the proper procedure to insure that an accusatory *106 instrument is legal in all respects, the form given is that of an acknowledgement of the penalties of section 210.45 of the Penal Law with a place for the signature of the complainant under the acknowledgment .so as to be, in effect, an affirmance of the penalties which might be incurred for false swearing (1 Waxner, New York Criminal Practice, Appendix B, Form 2:1).
The enactment of CPL 100.30 was a liberalization and expansion of the mode of verifying an accusatory instrument (see Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 11 A, CPL 100.30). It in no way was intended to allow the use of an unsworn accusation in a criminal case. Each method of verification must be adhered to in all aspects, and where there is a break in the chain of the required formality, an accusatory instrument falls, even if on its face it appears to have been sworn to properly (People ex rel. Siegal v. Dros, 17 Misc 2d 398, revd. 14 A D 2d 66, revd. 11 N Y 2d 167, supra; People v. Semonite, 18 Misc 2d 427; People v. Dutcher, 38 Misc 2d 37). Indeed, the potential for abuse, if this is not done, was one of the reasons for the expansion of the perjury provisions of the Penal Law (People v. Campbell, 48 Misc 2d 144,146).
There is no doubt that forms and procedure in the law are still vital, even though the modern trend is to minimize the- formalities (People v. Zambounis, 251 N. Y. 94). Indeed, there is authority to the effect that where the criminal procedure is liberalized, the necessity to adhere to the spirit and sense of the statute is greater (People ex rel. Siegal v. Dros., 11 N Y 2d 167, supra). The language of the Court of Appeals at page 172 in the afore-mentioned case is very appropriate to the situation we have here: ‘ ‘ The entire scheme involving the downgrading of these violations [i.e., misdemeanors to violations] was solely for the purpose of achieving more expeditious disposition of the cases, with the express retention, however, of defendant’s procedural safeguards; indeed, the more expeditious the process, the greater may be the need to insure that a defendant’s rights will not be brusquely violated.”
This court is of the opinion that the complaint herein was not properly verified and wa's, in effect, an unsworn accusatory information which, if given effect by this court, would violate this defendant’s rights.
Accordingly, the complaint is dismissed, and the defendant is discharged.
*107 INFORMATION COMPLAINT (Secs. 100.05-100.50 CSRL) Special Sessions Court, City of Yonkers, County of Westchester, New York. THE PEOPLE OF THE STATE OF NEW YORK j vs. Vss. NANCY COLDIRON ) I, J. H. Weir, the complainant herein, am a police officer of the State of New York, to wit, a(n) State Trooper of the New York State Police attached to Troop T, stationed at Tariytown, New York. I accuse Nancy Coldiron, the defendant in this action and charge that on or about the 20 day of March, 1972, at Yonkers Toll Barrier, NY Tway in the City of Yonkers, County of Westchester, New York at about 2 o’clock in the afternoon said defendant did *intentionally knowingly and unlawfully commit the *jnisdemeanor of driving while intox. contrary to the provisions of Section 1192, subdivision-of the-Law of the State of New York. The facts on which this accusation is made are of my own knowledge: A. Of my own knowledge. The defendant did operate and drive a 1966 Ghev. bearing NY reg. WE-6123 in a northerly direction on the aforementioned time and place and did drive said vehicle in an erratic manner driving upon the concrete abutment of the Yonkers Toll Barrier. Her speech was incoherant. Her eyes were bloodshot. She smelled of alcohol. She was staggering and beligerant, all this contrary to provisions made and provided for. Wherefore I request that a warrant be issued for the arrest of the defendant. J. H. WEIR, Complainant NOTE: Raise statements made herein are punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law. ••Sworn to before me this day of , 19 (Signature) (Title) "***I certify this to be a true copy of the accusatory instrument filed in this court upon which the attached warrant is issued. (Signature) (Title) (Date) •Strike all words not applicable. ••Need be sworn to if court specifically requires (See. 100.30 CPL). •••Warrant cases only.